**Not for Publication**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | Criminal No. 15-0400-ES-1 |
| v. | OPINION |
| **VICTORIA HORVATH**, | |
| Defendant. | |

**HAYDEN, DISTRICT JUDGE**

Before the Court is defendant Victoria Horvath's "emergency motion for compassionate release" pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Motion").[1] (D.E. No. 471 ("Def. Mov. Br.")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Crim. P. 43(b)(4); *United States v. Styer*, 573 F.3d 151, 154 (3d Cir. 2009). For the following reasons, the Court DENIES the Motion.

**I.  Background**

On March 14, 2016, Horvath pleaded guilty to conspiracy to distribute and possess with intent to distribute oxycodone. (*See* D.E. Nos. 285 & 286.) Based on a total offense level of 23 and criminal history category of VI, the applicable guideline range was 92 to 115 months' imprisonment. (Presentence Investigation Report ("PSR") at 38; *see also* D.E. No. 476, Sentencing Hearing Transcript ("Sentencing Tr.") at 3:23–4:4.) After considering the relevant

---

[1] Horvath initially filed three *pro se* motions for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (D.E. Nos. 461–63.) Subsequently, Horvath's counsel filed a notice of appearance and assumed representation of Horvath. (D.E. No. 464). Thereafter, Horvath filed two additional *pro se* motions, similarly seeking immediate release to home confinement. (D.E. Nos. 466–67.) Because *pro se* litigants have no right to "hybrid representation," the Court terminated Horvath's first three *pro se* motions without prejudice, and Horvath's counsel withdrew the last two *pro se* motions. (D.E. Nos. 465 & 469); s*ee United States v. Turner*, 677 F. 3d 570, 578 (3d Cir. 2012).

factors in 18 U.S.C. § 3553(a), submissions by counsel, the PSR, and arguments made at the hearing, the Court sentenced Horvath to 92 months of imprisonment and 3 years of supervised release. (*See* D.E. No. 332 ("Final Judgment") at 2–3.) Her proposed release date, according to BOP records, is September 10, 2022.

Horvath now moves for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that the COVID-19 pandemic and her medical conditions—namely, severe obesity, hypertension, hyperlipidemia, pre-diabetes, and chronic asthma—create extraordinary and compelling reasons to release her from imprisonment and to place her in home confinement at her family house in Belleville, New Jersey. (*See generally* Def. Mov. Br.) Pursuant to the Court's Order, the Government submitted opposition to the Motion on August 6, 2020. (D.E. No. 473 ("Gov. Opp. Br.").) On August 28, 2020, the Court ordered the United States Probation Office to issue a report regarding "the person or persons currently living at Horvath's family house in Belleville, New Jersey" and "any other information that is relevant to Horvath's safety, security, and health, should she be released to the proposed family house." (D.E. No. 475.) The Probation Office submitted its report on September 3, 2020. On or about September 21, 2020, Horvath, through her counsel, proposed an alternative release address in South Amboy, New Jersey. The Probation Office conducted a home visit to the South Amboy address and submitted a second report on October 2, 2020. This Opinion follows.

**II.  Legal Standards**

Once a term of imprisonment has been imposed, the Court may only modify it under very limited circumstances. *In re Morris*, 345 F. App'x 796, 797–98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)). Relevant here, 18 U.S.C. § 3582(c)(1) provides that, in any case:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully

2

> exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that-
>
>> (i) extraordinary and compelling reasons warrant such a reduction;
>>
>> [. . .]
>>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The United States Sentencing Commission has promulgated a policy statement that, in relevant part, allows a court to grant compassionate release or a sentence reduction where: (i) extraordinary and compelling reasons warrant a reduction in a defendant's sentence; (ii) the defendant is not a danger to the safety of others or to the community, as provided in 18 U.S.C. § 3142(g); and (iii) release from custody complies with the Section 3553(a) factors. *See* U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 (U.S. SENTENCING COMM'N 2018)).

### III.   Analysis

As a preliminary matter, the Government does not dispute that Horvath has satisfied the exhaustion requirement. (Gov. Opp. Br. at 11 n.3.) According to the Government, she filed a request for compassionate release with the BOP on April 24, 2020, which the BOP denied on May 4, 2020. (*Id.*) According to Horvath, however, her request to the BOP for compassionate release was made on March 26, 2020, to which the BOP had not responded as of July 22, 2020, when the instant Motion was filed. (Def. Mov. Br. at 10.) Based on either of these two requests, the Court agrees with the parties that Horvath has exhausted the administrative remedies and the Motion is properly before the Court for consideration pursuant to § 3582(c)(1)(A). *See United States v.*

*Harris*, 812 F. App'x 106, 107 (3d Cir. 2020).

### A.     **Extraordinary and Compelling Reasons for Reduction**

Per Congressional directive, the Sentencing Commission issued a policy statement that extraordinary and compelling reasons for compassionate release exist when the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, Application Note 1(A)(ii)(I). In addition, the policy statement includes a catchall provision that allows the Director of the BOP to determine if "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the enumerated reasons described in the policy statement. *Id.* at Application Note 1(D). Because the Sentencing Commission's policy statement was issued before Section 3582(c) was amended to allow defendants to file motions for compassionate release, the policy statement refers only to motions filed by the Director of BOP. *See generally* U.S.S.G. § 1B1.13. Notwithstanding, the parties do not dispute that the policy statement applies where, as here, the motion for compassionate release was filed by the prisoner. (*See* Gov. Opp. Br. at 13 n.5.)

The Government acknowledges that "the risk presented during the current COVID-19 pandemic by Horvath's having a body mass index ("BMI") well over 30 constitutes an 'extraordinary and compelling reason' under § 3582(c)(1)(A) and the corresponding Sentencing Guideline policy statement . . . ." (*Id.* at 14.) Horvath weighs about 337 pounds and, as of March 26, 2020, she had a BMI of about 65. (D.E. No. 473-2, Government Exhibit B, Horvath's Medical Records ("Med. Rec.") at 6 &11.) This condition alone places her on the CDC's list of people who "**are at increased risk** of severe illness from COVID-19." *See* CDC, *People with Certain*

*Medical Condition* (emphasis in original).[2] In light of Horvath's medical condition, the Government does not attempt to argue that the preventive measures at FCI Danbury, where Horvath is serving her sentence, sufficiently mitigate Horvath's increased risks associated with the COVID-19 pandemic. (*See* Gov. Opp. Br. at 14–15.) On this record, then, Horvath has met her burden of establishing that her underlying medical conditions and the COVID-19 pandemic create extraordinary and compelling reasons that may justify release.

### B. Section 3553(a) Factors and Dangerousness

The Court must analyze next the applicable factors set forth in Section 3553(a) to determine whether compassionate release or a sentence reduction is proper. 18 U.S.C. § 3582(c)(1)(A). The applicable Section 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

These factors are examined in the context of the requirement that the court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." 18 U.S.C. § 3553(a).

---

[2] The CDC website is available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions html (last updated September 11, 2020) (last visited September 22, 2020).

5

At her sentencing, the court evaluated each of these factors. Horvath was a participant in a large scale drug trafficking organization ("DTO") that involved at least 16 individuals; the offense conduct established she was a manager of the scheme who "orchestrat[ed] so many different people." (Sentencing Tr. at 35:3–36:22.) Based on Horvath's role as a manager or supervisor in criminal activity that involved five or more participants, the Probation Office recommended an enhancement of three offense levels. (PSR ¶ 116.) The plea agreement stipulated to a two-level enhancement, which the sentencing court accepted. (Sentencing Tr. at 3:13–4:4.)

The sentencing court properly considered Horvath's conduct on bail. On various occasions, Horvath violated the conditions of pretrial release and, on one occasion, had lied to the sentencing court about taking oxycodone pills. (*See* PSR ¶¶ 107–08.) The court observed that Horvath's "conduct, both the manipulative conduct as well as the direct lie to the Court [were] intertwined with" her long-standing drug addiction. (Sentencing Tr. at 33:6–22.) The Court determined that Horvath's pretrial conduct was such that specific deterrence was "most certainly in play." (*Id.* at 34:21–23; 35:22–23.) Noting that "even being charged" did not deter Horvath, the Court concluded that "what is only going to deter [Horvath] is a significant sentence." (*Id.* at 35:22–23; 36:5–6.) Similarly, the Court determined that general deterrence was "absolutely in play" in light of the ongoing opioid epidemic and the large scale of the DTO Horvath was involved in, such that a message needed to be sent to society that "if you are caught distributing drugs, you will be punished, and punished significantly." (*Id.* at 34:23–35:2, 36:17–37:13.)

Nevertheless, after considering Horvath's lack of education, the loss of her parents at a young age and subsequent loss of siblings, which, in combination, potentially led to her drug abuse, the Court sentenced her at the low end of the guideline range to 92 months of imprisonment. (*Id.*

at 38:9–13.)

As of July 27, 2020, Horvath has served 57.5% of the full term imposed by the Court, or 67.5% of her expected term, taking into account the good time credit she received. (D.E. No. 473-1 at 3.) Considering the § 3553(a) factors, the Court is not persuaded that a sentence of 55 months is sufficient punishment and provides the general and specific deterrence referred to by the court in fashioning the sentence of 92 months. This is particularly true given Horvath's role as manager and supervisor of a significant DTO. As the court noted, Horvath's criminal conduct was initiated to "feed[] a habit" but ultimately turned into "a business." (Sentencing Tr. at 35:17–18.) Granting Horvath's release from BOP custody is to all intents and purposes a sentence reduction. While she may be willing to agree to home confinement as a condition, almost two years of home confinement is patently impractical and an unwarranted burden on supervision resources. In short, the court now must decide if a sentence of 55 months sufficiently punishes and deters consistent with the reasons behind Horvath's 92 months sentence, and concludes it does not.

Further support for denying this motion is Horvath's very problematic release plans. In its first report dated September 3, 2020 ("Probation Memorandum I"), the Probation Office provides details about the family house in Belleville, New Jersey . Six of her co-conspirators live there,[3] along with three additional adults and two children. Among the nine adults, at least six have a known history of substance abuse, and one of Horvath's co-conspirators is currently noncompliant with ▮ conditions of supervision ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Probation Memorandum I at 1.) When she resided with these individuals, Horvath violated bail conditions by using illicit substances in her co-conspirators' presence. (*See, e.g.*, PSR ¶ 107.) Other family

---

[3] The six individuals who were involved in the same conspiracy with Victoria Horvath ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

members residing in the family home also used illicit substances while under bail supervision. (Probation Memorandum I at 2.) Moreover, Horvath was "at the center of many transactions" conducted by this criminal organization: she "made doctors' appointments for members of the DTO," including for individuals who are currently living in the family house at issue; "she was the point of contact between the local distributors and customers;" and she "negotiated sales on behalf of the DTO." (PSR ¶ 103.) The Court thus has serious concerns that releasing Horvath to the family house where her co-conspirators reside would increase her risk of recidivism, rendering her a danger to the safety of others or to the community. *See* 18 U.S.C. §§ 3142(g), 3553(a)(2)(C).

The Court is also not persuaded that the family home in Belleville, New Jersey is a safe place for Horvath during the COVID-19 pandemic. The sheer number of people who currently live in this three-bedroom-two-bathroom house is alarming. The nine adults and two children must share bedrooms and sleep on couches or in the basement. (Probation Memorandum I at 1.) The Probation Office reports that the interior of Horvath's family home is "extremely unkempt and unmaintained, with piles of papers, trash, food, and clothing," and "[r]odents have often been observed" during home inspections. (*Id.*) As Horvath herself argues, "COVID-19 thrives in densely packed populations" (Def. Mov. Br. at 2); Horvath thus fails to show that the proposed home confinement in Belleville, New Jersey sufficiently mitigates the increased risk she faces in light of the pandemic.

Apparently cognizant of the poor conditions at the Belleville family home, Horvath proposed a second release address in South Amboy, New Jersey. The Probation Office's second memorandum dated October 2, 2020 ("Probation Memorandum II") states that the South Amboy address is a "well-maintained" two-floor apartment with three bedrooms. The apartment is currently occupied by Horvath's brother, ▮▮▮▮▮▮▮▮▮▮, and his wife, ▮▮▮▮▮▮▮. (Probation

8

Memorandum II).  Nevertheless, both Probation Memoranda raise "a significant concern" over the lack of social services during the COVID-19 pandemic, which is a vital consideration to Horvath's request for compassionate release.  (*See* Probation Memorandum II; Probation Memorandum I at 2).

It is undisputed that Horvath needs continuing medical care to control her hypertension, hyperlipidemia, pre-diabetes, and chronic asthma, for which she has been receiving ongoing treatment at FCI Danbury.  (*See, e.g.*, Med. Rec. at 4 (stating that Horvath is receiving Albuterol and Momestatone Furoate for her asthma, Atovastatin for her hyperlipidemia, and Lisinopril for her hypertension).)  According to the Probation Memoranda, and of significant concern, Horvath will need "welfare benefits, medical care, Medicaid benefits, and substance abuse treatment services," which will likely take months to set up in this current pandemic, and which cannot be applied for until she is released.  (Probation Memorandum I at 2; *see also* Probation Memorandum II.)  The Probation Memoranda further indicate that Horvath's family members who she intends to live with will not be able to assist her with transportation for medical appointments or benefits application appointments.  (Probation Memorandum I at 2; Probation Memorandum II.)  As such, Horvath's circumstances in no way constitute a situation where a defendant's "continued incarceration might interfere with his ability to get needed medical care."  *United States v. Pabon*, No. 17-165, 2020 WL 2112265, at *8 (E.D. Pa. May 4, 2020) (citing 18 U.S.C. § 3553(a)(2)(D)).  Quite the opposite, this record indicates that releasing Horvath to her either of the proposed locations not only is inadequate to address her medical needs, but will interrupt the medical care she is getting at FCI Danbury.

Horvath has demonstrated increased risk, but her release plan does not mitigate that risk.  Adding this conclusion to the analysis under Section 3553 (a) and U.S.S.G. § 1B1.13 set forth

9

above constrains the Court to deny her relief under 18 U.S.C. § 3582(c)(1)(A).

**IV.     Conclusion**

For the foregoing reasons, Horvath's motion is DENIED. An appropriate Order accompanies this Opinion.

<em>/s Katharine S. Hayden</em><br>
<strong>Katharine S. Hayden, U.S.D.J.</strong>